And then we'll hear argument, I hope, in the last case scheduled. Mr. White, is Mr. Scaraggi available now by phone? Yes, he should be. I see you there, Mr. Scaraggi. Can you hear us? Yes, I can hear you. Thank you. We did have some technical problems, but yes, I'm on the line now. All right, Mr. Scaraggi, this is Judge Carney. I'm here with Judges Calabresi and Nardini and opposing counsel David Seid from the NLRB. Would you please proceed? You have seven minutes. Thank you, Your Honors. Good morning. I had some technical problems, but I represent the defendants on a petition for review of an order of the National Labor Relations Board. The defendants here are Nico Asphalt and Citywide Paving. The issues in the case are whether or not these employers, Nico and Citywide, violated Section 885 and 1 of the National Labor Relations Act by refusing to bargain with the union. The union, in this case, is a Local 175. And by failing to apply the collective bargaining agreement, which was in existence between the union and Nico, one of the defendants, and whether Citywide violated Section 882 and 1 of the act by recognizing another local union, Local 1010, and further, whether the complaint was time barred by Section 10B of the act. Nico and Citywide are in the business of asphalt restoration in Manhattan. Their primary customer was Consolidated Edison, Con Ed. Con Ed, for over 10 years, had a contract with Nico Asphalt. And at the hearing, which was presided by the ALJ, Nico acknowledged that they had a contract with Local 175. And the ALJ found that Nico did not give the required notice to terminate its collective bargaining agreement with Local 175. However, during that period of time, it was approximately in 2014 when Con Ed changed the contract. They added a provision to the contract that existed for years between Nico and Con Ed. And they put a provision in that any labor, which was to be provided to any Con Ed contract, had to have... I'm sorry. Council, that is all very well. But basically, that isn't the question before us. We understand why you might have wanted to change the union. But the question before us is, was the ALJ's finding that there was alter ego, and that the same company simply changed unions without doing the negotiation that was required? The fact that you might have had a reason for wanting to do it is all very well. But isn't the issue before us? The issue before us is, didn't the ALJ have plenty of evidence on the basis of which it reached its conclusion? And we defer to that. Well, there was evidence and testimony which indicated that on multiple occasions, a representative, the principal of Nico, specifically requested the business manager of Local 175 to... But there was plenty of evidence to support what the ALJ found. We have cases of this sort all the time. We have thousands of immigration cases in which, whether I like it or not, I do what an immigration judge finds. We have social security cases. It's a question of how much we rely on the findings of fact of the ALJ when there is evidence to that support. There is evidence that Peter Santos Sr. was in control. There is evidence that there wasn't really a rental of the equipment, but it was the same one. The ALJ found in one direction. Where do we go from there? Well, citywide, this is not the typical alter ego case, where the alter ego corporation is established in order to avoid or evade their obligations under a reunion contract, under a collective bargaining agreement. This was a situation in which citywide and Nico were confronted with a Hobson's choice. You either will continue working with Con Ed, but only if you use labor that comes from an AFL... You keep coming back to the fact that you had a good reason for violating the law. But that doesn't mean you didn't violate the law. But there was evidence that there were negotiations, not formal negotiations... The evidence is that you only talked to the union after the fact. There is evidence that you only talked after the fact. And that again is what the ALJ found. Now, you might, you know, there might be evidence to the contrary. I don't know. But wasn't there evidence sufficient to support the ALJ's finding against you? Yes, there was, your honor. Well, then where do we go from there? There was evidence to support it, but there was also evidence which indicated that there were negotiations between the principal of Nico and the business manager of Local 175. On repeated occasions, the request was made, please gain admission to the BCTC, Building Trades Construction Union for the greater New York area, and we will continue to do work with 175. And it was represented by the business manager from Local 175 to the principal of Nico that he would try to gain admission to the Building Trade Union. And he never gained admission. The Local 175 and the Employer Association, the New York Independent Contractors Association, filed a separate lawsuit in the U.S. District Court before Judge Wood, Judge Kimber Wood, alleging an antitrust violation because of the provision that Con Ed inserted into their contract that required use of only a union that was affiliated with the BCTC, and Judge Kimber dismissed that lawsuit. So there was the lawsuit that was brought by both Local 175 and the Employer Association. There were the attempts made by the principal of Nico to have the business manager, by whatever means he could, gain admission to the Building Trades Construction Union, and all of those efforts were made. Nico then was faced with no other alternative other than to seek some other form of release. It was impossible for them to follow the terms of the agreement with Con Edison, and, consequently, citywide paving was set up. But, again, citywide paving was not set up. Mr. Scaraggi, your time has expired. You have three minutes of rebuttal. Okay, we'll go to the board. Good morning, Your Honor. David Sy to the Labor Board. Given that the companies did not file a reply brief and acknowledged their argument this morning that there is substantial evidence to support the board's finding, I would simply ask that the court enforce the board's order, and unless this court has a need. Let me just ask you, though, so what options were available to the companies when faced with their major client saying you can't deal with 175, you have to deal with 110? What are they supposed to do? Sure, Your Honor. Well, first of all, to the extent that the companies are arguing there's an impossibility, that argument is not before the court because it was never accepted or raised to the board. But having said that, let me make two points. First of all, this whole issue about the BCT requirement that a union bond to the BCT state is really a red herring because the company acknowledges at age five of its brief that even as late as October 2015, and this is adopted from the board's findings, so they're recognizing the board's finding, even as late as October 2015, NECO successfully negotiated another bid to extend the Con Ed contract while using local 175 labor. So it arguably isn't even an issue, but to the extent it's an issue, the companies cannot simply evade their bargaining obligation because there's a difficult business decision. As far as the discussions that they had with local 175, it was simply to inform them at a couple of points over the course of the year that there was a requirement. Never said that anything was imminent. Never said that there was any potential of setting up a second company to do the work. And so speculation as to what the union may or may not have been able to do had they been properly given an opportunity to negotiate and bargain. But arguably, if local 175 was given a deadline and said, look, if this doesn't happen by a certain date, we're going to have to look into setting up a second company. Local 175 revisited and taken a much more firm attempt to try and join the BCTC. It could have negotiated with NECO over non-Con Ed work to make sure that work stayed within NECO and was still performed by local 175 members. Or it could have also negotiated if it was going to agree to give up some of the work. It could have negotiated with local 175 members to continue to do that work with the new companies. There's all sorts of things. And again, it would be speculation on my part as to how the results might have turned out. But it certainly just because the business decision doesn't allow, as the D.C. Circuit recognized in the island architectural case, and the company made no attempt to even distinguish in its opening brief, that in and of itself doesn't require to abate bargaining obligation. Thank you. Thank you. Very good. Then we'll hear rebuttal. Thank you. Thank you. Yeah, you have three minutes. Thank you, Your Honor. Early on in the hearing, which was conducted by the ALJ. He asked the same question Your Honor asked, just asked a few moments ago. He asked counsel. When he understood what the predicament was, either you do work using 1010 laborers or if you do work using 175 laborers who are not members of the B.C.T.C., you no longer have a contract with your main customer and you're basically out of business. Mr. Scoraggi, Mr. Sy just gave a number of options for proceeding within the boundaries of both the contractual obligations and the National Labor Relations Act, none of which your client pursued so that it seems to me the ALJ's question, as well as my question, was was answered. I mean, after all, it was inflicting contractual obligations voluntarily undertaken by the companies that caused the problem. Am I missing something? Yes, Your Honor. But as I pointed out earlier that there were conversations with the business manager of 175 with regard to gaining admission to the B.C.T.C. and even during the period prior to the incorporation of citywide paving, NICO, the defendant NICO, continued to use 175 labor on B.C.T.C. who were not affiliated with the B.C.T.C. on Con Ed projects until Con Ed said either you you satisfy that requirement or you no longer have a contract with us. So they did everything that they could within their power in order to continue doing work for Con Ed. And citywide, again, I point out, was not created to evade a collective bargaining agreement. They signed the collective bargaining agreement with the only union that was able to provide labor, which would allow compliance with the Con Ed contract. Thank you. Thank you very much. I think we have the arguments. We'll reserve decision.